# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 17-cv-61115-BLOOM/Valle

CORANNE PAMELA KRUSE,

      Plaintiff,

v.

MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Massachusetts Mutual Life Insurance Company's ("Defendant" or "MassMutual") Motion to Dismiss the Complaint, ECF No. [7] (the "Motion"); *see also* ECF No. [8] (Memorandum of Law in Support of the Motion). The Court has reviewed the Motion, all opposing and supporting submissions, the record and the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

## I. BACKGROUND

This action centers around a life insurance contract (Policy No. 8652098, or the "Policy") entered into by Defendant, an insurance company based in Massachusetts, and Eliot J. Lupkin ("Mr. Lupkin") in March of 1991, whereby Defendant agreed to provide $400,000.00 in death benefits to Mr. Lupkin's elected beneficiary or beneficiaries in exchange for payment of a yearly premium by Mr. Lupkin. *See* ECF No. [6-2] at ¶ 7. Many years later, when Mr. Lupkin passed away on November 13, 2016, the Policy remained in effect. *See id.* at ¶ 8.

Several years prior, on August 8, 2008, Mr. Lupkin's financial advisor sent a form to Defendant on behalf of Mr. Lupkin requesting that Defendant provide certain information regarding the Policy, including the identity of the beneficiary of the Policy. *Id.* at ¶ 11. In a letter dated August 20, 2008 (the "August 2008 Letter"), an employee of Defendant provided Mr. Lupkin's financial advisor with the requested information, and in doing so, identified Plaintiff Coranne Pamela Kruse ("Plaintiff" or "Ms. Kruse") as the primary and sole beneficiary of the Policy. *See id.* at ¶¶ 12, 17. Thereafter, Mr. Lupkin met with his financial advisor on multiple occasions to discuss his finances. On each of those occasions he expressed to his financial advisor his intention and belief that Plaintiff would be the primary and sole beneficiary of the Policy. *Id.* at ¶ 14. According to the Complaint, Mr. Lupkin believed that Plaintiff was the primary and sole beneficiary of the Policy on the date of his death. *Id.* at ¶ 15.

Following Mr. Lupkin's death, a wealth counselor working for the estate of Mr. Lupkin (the "Estate") contacted Defendant regarding Mr. Lupkin's death and the Policy. *Id.* at ¶ 16. Defendant responded to the wealth counselor with an email advising him that the Policy named Lea Lupkin ("Ms. Lupkin")—Mr. Lupkin's niece—and Colette Bolduc ("Ms. Bolduc") as the only two beneficiaries. *Id.* at ¶ 17. Thereafter, on December 22, 2016, Plaintiff, as personal representative of the Estate, employed counsel to send Defendant a demand letter demanding payment of the death benefits under the Policy to Plaintiff. *Id.* at ¶ 19. On January 28, 2017, Plaintiff submitted to Defendant a formal claim to the death benefits under the Policy. *Id.* at ¶ 20.

On April 5, 2017, Plaintiff, in both her individual capacity and in her role as personal representative of the Estate, initiated the instant action against Defendant. *See* ECF No. [1] at ¶¶ 2, 4. Based on the above mentioned factual allegations, Plaintiff asserts the following eight

claims for relief in her Complaint: equitable estoppel (Count I); negligence against Plaintiff (Count II); negligence against Mr. Lupkin (Count III); breach of third party beneficiary contract (Count IV); breach of implied-in-fact contract (Count V); fraudulent misrepresentation (Count VI); negligent misrepresentation (Count VII); and specific performance (Count VIII). *See* ECF No. [6-2]. Defendant moves to dismiss the Complaint in its entirety, arguing that each of Plaintiff's claims fail to state a claim under which relief can be granted. *See* ECF Nos. [7], [8].

## II.  LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010). With respect to Rule 12(b)(6), "[d]ismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the

complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. DISCUSSION

### A. Equitable Estoppel (Count I)

Defendant seeks dismissal of Count I on the basis that the Complaint fails to allege facts satisfying all of the elements required for an equitable estoppel claim—in particular, that Mr. Lupkin actually relied on the August 2008 Letter to his detriment. *See* ECF No. [8] at 7-8. The Court disagrees.

The elements of an equitable estoppel claim, which a plaintiff must prove by clear and convincing evidence, are: (1) a representation about a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel based on the representation and reliance thereon. *Lewis v. Dep't of Health & Rehab. Servs.*, 659 So. 2d 1255, 1256-57 (Fla. 4th DCA 1995) (quoting *State Dep't of Revenue v. Anderson*, 403 So. 2d 397 (Fla. 1981)).

The first element is clearly satisfied here. Defendant's current position that Plaintiff is not listed as a beneficiary under the Policy is contrary to the August 2008 Letter in which Defendant represented that Plaintiff was not only a beneficiary, but the sole beneficiary. With respect to the latter two elements, the Court begins by noting that the particular reliance alleged in the Complaint is not necessarily a change in position; rather, it is in essence the opposite. Plaintiff alleges that had Mr. Lupkin known that Plaintiff was not the beneficiary under the

Policy, he would have taken the appropriate measures to make her the beneficiary. ECF No. [6-2] at ¶¶ 14-15. According to the Complaint, because he did not know this, he decided to not do anything—i.e., he did not change his position. *Id.* at ¶ 18. Nonetheless, the Court finds that the alleged decision by Mr. Lupkin not to change the Policy based on the August 2008 Letter constitutes reliance for purposes of equitable estoppel. Taking the allegations in the Complaint as true, Mr. Lupkin's inaction led to an identifiable detriment - that is, an undesired disbursement of the Policy's death benefits.

Defendant cites to *United States Life Ins. Co. in the City of N.Y. v. Logus Mfg. Corp.*, 845 F. Supp. 2d 1303 (S.D. Fla. 2012), in support of its argument that the above mentioned reliance was not reasonable. *See* ECF No. [8] at 8. Defendant points out, and correctly so, that a claim of reliance must fail where the parties have equal knowledge of the truth or where the plaintiff had access to the truth. *Id.* at 7-8 (citing *Lennar Homes, Inc. v. Gabb Constr. Serv., Inc.*, 654 So. 2d 649, 652 (Fla. 3d DCA 1995), and *Logus*, 845 F. Supp. 2d at 1314). Defendant is incorrect to argue here, however, that "[b]ecause Mr. Lupkin could have, at any point in the eight years after the August 2008 Letter, called MassMutual and confirmed the beneficiary (or questioned the contents of the August 2008 Letter), he cannot claim to have relied on it." *Id.* at 8. On this point, *Logus* is distinguishable from this case, and the distinction illustrates why Mr. Lupkin's alleged reliance on the August 2008 Letter was not unreasonable. At issue in *Logus* were deficient "Change Forms" that had been submitted by the deceased insured to the insurer in order to change the named beneficiary of his life insurance policy to his personal trust. *See* 845 F. Supp. 2d at 1318-19. The attempt proved unsuccessful due to the deficiencies in the Change Forms. *See id.* at 1309-10. The trust, which was one of two defendants in the action,[1] claimed

---

[1] The action was brought in interpleader by the insurance company to determine the rightful owner of the policy proceeds.

that if the insurer would have notified the insured of the deficiencies in the Change Forms, the insured would have remedied those deficiencies and thus secured the policy's proceeds for his personal trust. *Id.* at 1319. The court rejected that argument, reasoning in relevant part as follows:

> [T]he Trust's purported reliance was not reasonable because it could have simply contacted American General to confirm that the change of beneficiary had been made. . . . The Trust's abject failure over a period of nine years to call or write to American General and request confirmation that it had been substituted as the beneficiary in the instant Policy renders its alleged reliance unreasonable.

*Id.* In this case, there are no Change Forms at issue (at least not as reflected in the Complaint). More importantly, whatever might have precipitated Mr. Lupkin's inquiry in 2008 as to who the named beneficiary or beneficiaries under the Policy were, the inquiry was made directly to Defendant, and Defendant itself responded to the inquiry. In other words, Mr. Lupkin did exactly what the *Logus* court explained that the insured in that case should have done, but did not do. In the Court's view, under these circumstances, that Mr. Lupkin apparently relied on Defendant's response in the August 2008 Letter in the years to follow is not in and of itself unreasonable. Accordingly, the Court finds that Plaintiff's equitable estoppel claim under Count I has been sufficiently pled.

### B. Negligence Against Plaintiff (Count II)

Defendant seeks dismissal of Count II on the bases that Defendant owed no duty to Plaintiff, and that even if it did, there was no causal connection between any conduct by Defendant and the harm to Plaintiff alleged under Count II. *See* ECF No. [8] at 8-9. The Court agrees with the latter.

The elements of a negligence claim are: (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct; (2) the defendant's failure to

conform to that standard (i.e., a breach of the duty owed); (3) a reasonably close causal connection between the conduct at issue and the resulting injury (i.e., proximate cause); and (4) actual loss or damage. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). "The principle of 'duty' . . . may arise from four general sources: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Id.* (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992)). The fourth category consists of "that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant." *McCain*, 593 So. 2d at 503 n.2.

With respect to duty, Plaintiff alleges that Defendant "had a duty to Plaintiff to act on [her formal] claim [for the Policy's death benefits] within reasonable time after receipt of the application." ECF NO. [6-2] at ¶ 33. However, even if the Court were to assume that such a duty is a legally cognizable one—which the Court does not assume—Plaintiff cannot show that the specific harm alleged was caused by Defendant's conduct. Specifically, the harmful conduct by Defendant alleged in Count II of the Complaint is Defendant's failure to respond to Plaintiff's demand letter and subsequent claim for the Policy's death benefits. *Id.* at ¶¶ 32-34. As to the purportedly resulting harm, Plaintiff alleges that she "has been greatly damaged[] in that she has not received payment of the $400,000.00 in death benefits." *Id.* at ¶ 35. But there is simply no apparent causal nexus between Defendant's failure to respond to either Plaintiff's demand letter or claim and Plaintiff having not received the Policy's death benefits. To the contrary, the Court presumes—as Defendant indicates in its Motion—that Plaintiff is not named as a beneficiary under the Policy, and that that is the reason why Plaintiff has not received the Policy's death

benefits from Defendant.[2]  As such, the Court finds that Plaintiff's negligence claim under Count II fails.  As any amendment would be futile, Count II is dismissed with prejudice.

### C. Negligence Against Eliot Lupkin (Count III)

Unlike the negligence claim asserted in Count II, Defendant concedes that, with respect to the negligence claim asserted in Count III, it owed a duty to Mr. Lupkin—namely, "to adhere to the terms of the Policy and to pay the benefit due to the beneficiary of record at the time of death."  ECF No. [8] at 10.  In seeking dismissal of Count III, Defendant instead argues that Plaintiff cannot show that Defendant breached that duty.  *See id.* at 10-11.  On that much, the Court agrees.  However, the Court finds that there is at least one other legally cognizable duty that Defendant arguably owed to Mr. Lupkin that Defendant appears to have breached.

That duty was a duty to convey to Mr. Lupkin accurate information regarding the Policy he was insured under, especially where the information conveyed was directly in response to an inquiry made by Mr. Lupkin.  Here, the inquiry by Mr. Lupkin at issue concerned in part the identity of the beneficiary or beneficiaries under the Policy.  To that extent, the August 2008 Letter apparently provided an inaccurate response.  Importantly, that inaccuracy goes to the heart of the negligence claim asserted in Count III.  Plaintiff alleges in Count III that Defendant "owed a duty to Eliot J. Lupkin according to their contractual relationship pursuant to the life insurance contract" and that "Defendant breached its duty by failing to protect Eliot J. Lupkin's interest and wishes regarding *his desired beneficiary* . . . ."  ECF No. [6-2] at ¶¶ 38-39 (emphasis added). In the Court's view, this allegation sufficiently implicates the above mentioned duty and alleged breach.  Accordingly, the Court declines to dismiss Plaintiff's negligence claim under Count III

---

[2] The Court notes that although the Complaint neither specifically alleges that the Policy does not name Plaintiff as a beneficiary nor attaches the Policy itself, the Complaint does not allege or even suggest that Defendant's representation that the only two beneficiaries currently named in the Policy are Ms. Lupkin and Ms. Bolduc—a representation that the Complaint does allege—is false.  *See* ECF No. [6-2] at ¶¶ 17-18; *see also id.* at ¶ 44 ("Plaintiff[] [ ] was not a party to that contract [(the Policy)].").

on the basis that Plaintiff cannot show that Defendant breached a duty owed to Mr. Lupkin, and otherwise finds that the claim has been sufficiently pled.

### D. Breach of Third Party Beneficiary Contract (Count IV)

Defendant seeks dismissal of Count IV on the bases that Plaintiff failed to attach a copy of the Policy to the Complaint, and that even if she had, she cannot show a breach of the Policy by Defendant. This is because the Policy does not name her as a beneficiary in the first place. *See* ECF No. [8] at 11-14. The Court agrees that because the Policy does not name Plaintiff as a beneficiary, Count IV must fail.

To establish an action for breach of a third party beneficiary contract, a plaintiff must allege and prove the following four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 195 (Fla. 2006) (citation omitted). "A non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005). With respect to determining who the appropriate beneficiary of an insurance policy is, the Supreme Court of Florida has explained that a court "need look no further than the plain language of the policy itself. . . ." *Cooper v. Muccitelli*, 682 So. 2d 77, 79 (Fla. 1996). Furthermore, in Florida, "one who seeks to change the beneficiary of a life insurance policy must strictly comply with the policy's terms. . . . The doctrine of strict compliance exists to protect the insurance company, and only the insurance company may waive it." *Logus*, 845 F. Supp. 2d at 1314 (quoting *Miller v. Gulf Life Ins.*, 12 So. 2d 127 (Fla. 1942))

(internal citation omitted). Further, "strict compliance states reject the notion that equitable arguments can trump the express terms of the contract agreed to by the parties because to hold otherwise would be to rewrite the contract for the parties." *Id.* at 1314-15. "In Florida, the burden of proving that there has been strict compliance, and therefore an effective change of beneficiary, rests squarely on the person claiming as the substitute beneficiary." *Id.* at 1315 (citing *Follenfant v. Rogers*, 359 F.2d 30 (5th Cir. 1966)).

Here, there is no dispute that the third party beneficiary contract underpinning Count IV is the Policy. Under Florida law, the Policy—particularly its language—is the starting point. Plaintiff admits that she was "not a party" to the Policy, ECF No. [6-2] at ¶ 44, and, more importantly, she fails to allege that she is actually listed as a beneficiary under the Policy. Instead, Plaintiff merely alleges that Mr. Lupkin "*intended* for Plaintiff[] [] to be the primary and sole beneficiary of the contract" and that Defendant breached "said contract by failing to make payment to [Plaintiff] of the $400,000.00 in death benefits." *Id.* at ¶¶ 45-46 (emphasis added). Based on what Plaintiff alleges (and does not allege), the Court presumes that Plaintiff is not a named beneficiary under the Policy. Thus, the Complaint as pled reflects that, pursuant to the plain language of the Policy, Plaintiff is not a valid third party thereunder so as to enable her to bring the breach of third party beneficiary claim asserted in Count IV.

The only discernible argument Plaintiff offers on this point is that the August 2008 Letter reflects that Mr. Lupkin intended Plaintiff to be the designated beneficiary of the Policy, the Policy's actual terms notwithstanding. *See* ECF No. [21] at 15-16. However, Plaintiff offers no supporting authority for the proposition that such a letter, without more,[3] can override the plain

---

[3] To the extent that Plaintiff alleges that Mr. Lupkin expressed to his financial advisor on multiple occasions following receipt of the August 2008 Letter his desire that Plaintiff be the Policy's sole beneficiary, conversations between Plaintiff and his financial advisor do not establish a "clear or manifest

language of a contract.  In the Court's view, under Florida law, that the August 2008 Letter identifies Plaintiff as the beneficiary under the Policy is simply not enough to overcome the plain language of the Policy. For example, Plaintiff offers no allegations regarding whether Mr. Lupkin always intended Plaintiff to be the beneficiary under the Policy (and so designated her as such at the time the Policy was first formed), or whether instead Mr. Lupkin at some point sought to substitute Plaintiff in place of someone else who had already been designated as the Policy's beneficiary.  The absence of such facts is critical; if the latter is the case, the Policy's plain language would dictate that Plaintiff would bear the burden of proving that Mr. Lupkin strictly complied with the Policy's terms in attempting to substitute Plaintiff as the beneficiary. *Logus*, 845 F. Supp. 2d at 1314-15.

Accordingly, the Court finds that Plaintiff fails to sufficiently state a claim for breach of third party beneficiary contract.  Count IV is therefore dismissed without prejudice and with leave to amend.  Should Plaintiff seek to reassert a breach of third party beneficiary contract in any amended version of her Complaint, she shall provide a copy of the Policy.  *See generally Walters v. Ocean Gate Phase I Condo*, 925 So. 2d 440, 443-44 (Fla. 5th DCA 2006) (explaining that "[a] complaint based on a written instrument does not state a cause of action until the instrument or an adequate portion thereof, is attached to or incorporated in the compliant") (citation omitted) (alteration in original).

### E.  Breach of Implied-in-Fact Contract (Count V)

Defendant seeks dismissal of Count V on the basis that Plaintiff is unable to allege a valid implied-in-fact contract because the Policy, which any implied-in-fact contract asserted by Plaintiff would operate to supplant, is enforceable.  *See* ECF No. [8] at 14-15.  The Court agrees.

---

intent of the *contracting parties* that the [Policy] primarily and directly benefit [Plaintiff]."  *Found. Health*, 944 So. 2d at 195 (emphasis added).

A contract implied-in-fact, distinguishable from a contract implied in law (or qausi contract), "exists where the parties have made an agreement of sorts which falls short of being an enforceable, true contract." *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 881 n.1 (Fla. 1st DCA 2010).

Here, Plaintiff does not actually claim that the Policy is somehow deficient or unenforceable in any way, much less allege facts that would support such a claim. To the contrary, Plaintiff's claim for breach of third party beneficiary contract in Count V reflects a recognition that the Policy is a valid and enforceable contract. Notably, Plaintiff admits in her Response to Defendant's Motion to Dismiss that she "ha[s] not seen the life insurance policy contract . . . ." ECF No. [21] 16. Plaintiff nevertheless contends that she has asserted the breach of implied-in-fact contract claim "*if* the [Policy] is held to be unenforceable due to a failure of the meeting of the minds." *Id.* at 17 (emphasis added). As Plaintiff herself recognizes however, "[w]hile the law will not recognize an implied-in-fact contract where an express contract exists, a contract may be inferred where an express contract fails for lack of proof." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010). That Plaintiff is "unsure as to the validity of the [Policy] as stated by Defendant"—in part because she has not actually seen it—is not the equivalent to a lack of proof of the Policy. ECF No. [21] at 16-17; *see Iqbal* 556 U.S. at 678 (explaining that a complaint cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Accordingly, the Court finds that Plaintiff fails to sufficiently state a claim for breach of implied-in-fact contract. Count V is therefore dismissed without prejudice and with leave to amend.

**F. Fraudulent Misrepresentation (Count VI)**

Defendant seeks dismissal of Count VI on the basis that Plaintiff is unable to satisfy all of the elements required for fraudulent misrepresentation claim—in particular, that Defendant intended the August 2008 Letter to induce Mr. Lupkin's reliance on it and that Mr. Lupkin actually relied on the August 2008 Letter to his detriment. *See* ECF No. [8] at 15-16. The Court agrees with the former.

"There are four elements necessary to establish fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representer's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010), and *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). With respect to inducement, a plaintiff cannot withstand a motion to dismiss for failure to state a cause of action "without specifically alleging more than the vague and conclusory statement they [he was] induced by the misrepresentation[.]" *Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 3d DCA 1995).

Here, Plaintiff alleges that "Defendant intended that the representation [made on the August 2008 Letter] induce Plaintiff [sic] to act on it by not making the corrective change of beneficiary to his life insurance contract." ECF No. [6-2] at ¶ 56. But this is nothing more than a conclusory allegation. *See Iqbal*, 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). That conclusory allegation is not supported anywhere in the Complaint, as Plaintiff has not alleged any facts demonstrating or even suggesting that the August 2008 Letter was sent with the

specific intention to induce Mr. Lupkin's reliance on it. In fact, the Complaint offers no factual allegations shedding light on the state of mind of the employee of Defendant who sent the August 2008 Letter. Instead, the Complaint simply alleges that an employee of Defendant provided the August 2008 Letter in response to an inquiry made by Mr. Lupkin's financial advisor. *See* ECF No. [6-2] at ¶ 12. All that allegation shows is that Defendant provided responsive information as requested by Mr. Lupkin; it does not show that Defendant necessarily did so with any particular concern on its part as to what Mr. Lupkin might do, or not do, with the information provided. Thus, in the Court's view, the allegation is insufficient to support a fraudulent misrepresentation claim.[4] Accordingly, the Court finds that Plaintiff fails to sufficiently state a claim for fraudulent misrepresentation. Count VI is therefore dismissed without prejudice and with leave to amend.

### G. Negligent Misrepresentation (Count VII)

Defendant seeks dismissal of Count VII on essentially the same bases that it seeks dismissal of Count VI, including on the basis that the Complaint fails to sufficiently allege that Defendant intended the August 2008 Letter to induce Mr. Lupkin's reliance on it. *See* ECF No. [8] at 3 ("Counts VI and VII . . . are both missing a crucial element . . . . While the beneficiary printed in the August 2008 letter may have been incorrect, there are no facts which would indicate that it was sent to induce or prevent any sort of action . . . ."). Defendant is again correct.

To state a cause of action for negligent misrepresentation, a plaintiff must show: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have

---

[4] It is worth noting here that, as already explained, the Complaint sufficiently alleges that Mr. Lupkin relied on the August 2008 Letter. To be clear, however, such reliance says nothing of the Defendant employee's intent who sent the August 2008 Letter.

known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Specialty Marine*, 66 So. 3d at 309. Negligent misrepresentation is distinguishable from fraudulent misrepresentation under Florida law in that the two claims "involve different elements, especially with respect to justifiable reliance. . . . Justifiable reliance is not a necessary element of fraudulent misrepresentation." *Id.* at 310 (internal citations omitted).

Plaintiff clarifies in her Response that, with respect to inducement, her negligent misrepresentation claim relies entirely on the same allegation as her fraudulent misrepresentation claim relies—that is, that "Defendant intended that the representation induce Plaintiff [sic] to act on it by not making the corrective change of beneficiary to his life insurance contract." ECF No. [21] at 22 (citing ECF No. [6-2] at ¶ 61). For the same reasons this allegation is insufficient to support Plaintiff's fraudulent misrepresentation claim, this allegation is insufficient to support her negligent misrepresentation claim. Accordingly, the Court finds that Plaintiff fails to sufficiently state a claim for negligent misrepresentation. Count VII is therefore dismissed without prejudice and with leave to amend.

### H. Specific Performance (Count VIII)

Plaintiff asserts Count VIII "in the alternative if all other counts are deemed inapplicable at law[,]" seeking specific performance of the Policy, but with payment of the death benefits made to her rather than the named beneficiaries. ECF No. [6-2] at ¶¶ 64, 72. Defendant seeks dismissal of Count VIII on the bases that Plaintiff failed to attach a copy of the Policy to the Complaint, and that even if she had, she is not entitled to the specific performance she seeks because the terms of the Policy are "clear, definite, certain, and complete" in not naming her as a

beneficiary. ECF No. [8] at 18. The Court agrees with Defendant that Count VIII is subject to dismissal, but not for the reasons asserted by Defendant.

"In order for a court of equity to decree specific performance of a contract, the terms of the agreement must be clear, definite, certain and complete, for the equitable remedy of specific performance is granted only where the parties have actually entered into an agreement that is definite and certain in all of its essential elements." *Bay Club, Inc. v. Brickell Bay Club, Inc.*, 293 So. 2d 137, 138 (Fla. 3d DCA 1974). Florida courts have held that a decree of specific performance, which is an equitable *remedy* granted at the discretion of a trial court, can be granted only when (1) the plaintiff is clearly entitled to it, (2) there is no adequate remedy at law, and (3) the trial court believes that justice requires it. *Invego Auto Parts, Inc. v. Rodriguez*, 34 So. 3d 103, 104 (Fla. 3d DCA 2010). "In order to invoke the *remedy* of specific performance, 'the plaintiff must do more than merely prove his case by a preponderance of the evidence, ... he must prove the contract as alleged in his complaint by competent and satisfactory proof which must be clear, definite, and certain." *Id.* (quoting *Miller v. Murray*, 68 So.2d 594, 596 (Fla.1953) (emphasis added).

As other district courts have recognized, it is not to be overlooked that a claim for specific performance is subject to dismissal "because 'specific performance is a remedy, not a freestanding legal claim.'" *Crain v. Chesapeake Appalachia, L.L.C.*, 2013 WL 4419023, at *7 (M.D. Pa. Aug. 14, 2013) (quoting *Clark Resources, Inc. v. Verizon Bus. Network Servs., Inc.*, 2010 WL 4973342, at *4 (M.D. Pa. Dec. 1, 2010)); *see also Gaines v. Robinson Aviation (RVA), Inc.*, 2014 WL 6882934, at *2 n.2 (M.D. Fla. Dec. 4, 2014) ("[S]pecific performance is a remedy to a breach of contract claim, not a claim for relief in and of itself."). As such, Count VIII,

which is nothing more than a request for specific performance of the Policy—"as [Plaintiff] believe[s] it currently exists," ECF No. [21] at 23—cannot stand alone as its own claim.

Moreover, the circumstances of this case are such that the remedy of specific performance is precluded as a matter of law, as another adequate remedy at law exists. Specifically, "because Plaintiff[] [is] merely seeking the payment of the [Policy's death benefits] in regards to [her] claim in Count [VIII], [she does] have adequate remedies available at law, *i.e.*, money damages. Specific performance is, by its nature, only an alternative to money damages in enforcing the terms of a contract." *Crain*, 2013 WL 4419023, at *7. To that extent, Plaintiff's request for specific performance is also redundant. As discussed, payment of the Policy's death benefits is the very same remedy Plaintiff seeks for her claim for breach of third party beneficiary contract claim in Count IV. Count VIII's request for the remedy of specific performance of the Policy is therefore duplicative of Count IV, which Plaintiff will be granted leave to amend. *See Gaines*, 2014 WL 6882934, at *2 n.2 ("Although Plaintiff labels Count 2 as a claim to enforce a pre-suit settlement agreement, specific performance is a remedy to a breach of contract claim, not a claim for relief in and of itself. As such, Count 2 is more properly construed as a claim for breach of contract."). For all of these reasons, Count VIII is dismissed with prejudice. *See Crain*, 2013 WL 4419023, at *7 (finding that because plaintiffs' claim requesting specific performance was "for an alleged breach of a contractual right of money, the remedy of specific performance [was] precluded as a matter of law[,]" and therefore dismissing the claim with prejudice and allowing plaintiffs leave to amend to add a breach of contract claim).

## I. Defendant's Request for Interpleader

Separate from the grounds for dismissal asserted by Defendant discussed above, Defendant clarifies that it "has not yet paid the death benefit due under the Policy because it has been faced with competing claims from Plaintiff, Ms. Bolduc and Ms. Kruse." ECF No. [8] at 6. To that extent, Defendant argues that it "is entitled to pay the death benefit to the proper recipient without risking multiple or duplicative liability for the contractual death benefit[,]" and therefore requests that the Court "order [Defendant] to file a complaint for interpleader, joining all of the interested parties, so that this Court might efficiently and completely determine the rightful recipient of the Policy proceeds." *Id.* Defendant's argument is well taken.

The specific relief Plaintiff seeks through her various claims is payment of the Policy's death benefits. To that extent, Defendant undoubtedly faces double liability—namely, potential payment of the total sum of the death benefits to both groups of competing parties identified. Interpleader allows a party who holds money claimed by multiple adverse claimants, such as Defendant here, "[to] avoid[ ] multiple liability by asking the court to determine the asset's rightful owner." *McBride v. McMillian*, 679 F. App'x 869, 871 (11th Cir. 2017) (quoting *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994)) (alterations in original). "The party holding the funds 'typically claims no interest in [the] asset and does not know the asset's rightful owner.'" *Id.* (quoting *In re Mandalay Shores*, 21 F.3d at 383) (alteration in original); *see also New York Life Ins. Co. v. Bostwick*, 2015 WL 4484305, at *2 (W.D. Wash. July 22, 2015) ("In interpleader actions, the 'stakeholder' of a sum of money sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money."). It appears in this case, then, that

interpleader would be the appropriate mechanism through which Defendant could seek to avoid the potential double liability it faces.

Of course, as it stands now, this case is not an interpleader action, as Plaintiff, rather than Defendant, initiated suit.  With respect to Defendant's request for an order permitting it to file a complaint for interpleader, Defendant is advised that the Federal Rules of Civil Procedure specifically allow for "defensive interpleader" actions.[5]  A defensive interpleader action is governed by Rule 22(a)(2), which permits a defendant exposed to "double or multiple liability" to seek interpleader through a "crossclaim or counterclaim."  *See generally ING Bank, N.V. v. M/V African Swan*, 2017 WL 1080078, at *5 (S.D.N.Y. Mar. 9, 2017).  It should be noted, however, that both of these devices, by definition, can only reach existing parties.  *Id.* (citing Fed. R. Civ. P. 13(a)-(b), (g)).  As such, Defendant is further advised that "under Fed. Rule Civ. Proc. 22, a defendant seeking interpleader must frame his pleading either as a cross-claim seeking relief against a co-party already in the lawsuit, or as a counterclaim seeking relief against the plaintiff. If the defendant states a claim seeking relief against such a co-party or plaintiff-counter-defendant, he may seek to bring in additional parties under the joinder provisions of rule 20. But the interpleader provided by Rule 22 must have some nexus with a party already in the case."  *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705 n.2 (1972); *accord Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 633 n.39 (5th Cir. 2002); *Vanderlinden v. Metro. Life Ins. Co.*, 137 F. Supp. 2d 1160, 1163, 1163 n.5 (D. Neb. 2001).  Accordingly, Defendant is granted leave to initiate a defensive interpleader action, which, pursuant to the Federal Rules of

---

[5] In opposition to this request, Plaintiff has expressed that she "ha[s] no interest in any ancillary or competing claims made upon MassMutual regarding Eliot J. Lupkin's life insurance policy or policies and intends to litigate the facts and matters between Plaintiff[] and MassMutual alone." ECF No. [21] at 5.  It goes without saying, however, that the Federal Rules of Civil Procedure trump Plaintiff's interests and intentions.

Civil Procedure, would involve the filing of a counterclaim against Plaintiff and the joining of additional parties—such as Ms. Bolduc and Ms. Kruse—to the counterclaim.[6]

## IV.  CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss, **ECF No. [7]**, is **GRANTED in part and DENIED in part**.

2.  Counts II and VIII are **DISMISSED with prejudice**.

3.  Counts IV, V, VI, and VII are **DISMISSED without prejudice**.

4.  Plaintiff is granted leave to amend and is direct to file an Amended Complaint on or before **August 21, 2017**.

5.  Defendant is granted leave to initiate a defensive interpleader action asserting any claims for declaratory judgment by filing a counterclaim against Plaintiff, and joining any additional parties as appropriate.

---

[6] The Court notes, however, that the "federal interpleader remedy does not shield a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1014 (9th Cir. 2012). Rather, "a claimant may seek to recover all damages directly and proximately caused by the negligent stakeholder's conduct." *Id.* In other words, "a disinterested stakeholder may not be subjected to liability for its failure to resolve the controversy over entitlement to the stake in one claimant's favor, but [] a stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action." *Id.* As such, to the extent that Plaintiff's surviving claims and any future claims might warrant recovery other than payment of the Policy's death benefits on account of Defendant's tortious conduct creating the instant conflict in the first place, such claims are not precluded by any interpleader action Defendant might bring. *See, e.g.*, *Sun Life Assurance Co. of Canada v. O'Connor*, 2017 WL 932148, at *2-3 (W.D. Wash. Mar. 9, 2017) (recognizing that certain claims asserting that "negligence might have caused the conflict over the funds . . . . may [be] properly [brought] . . . in an interpleader action") (citing *Lee*, 688 F.3d at 1014).

**DONE AND ORDERED** in Miami, Florida this 14th day of August, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record